**ZIN–PLAS CORPORATION, a corporation, Plaintiff,**

v.

**PLUMBING QUALITY AGF. CO. LTD., Marvin Freed, and Quality Tool Mfg. Co. Inc., Defendants.**

**No. G85–45 CA1.**

United States District Court,
W.D. Michigan, S.D.

Aug. 15, 1985.

John E. McGarry, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for plaintiff.

Earl J. LaFontaine, Krass & Young, Troy, Mich., John T. Piggins, Day, Sawdey, Flaggert & Porter, Grand Rapids, Mich., for defendants.

## OPINION RE PENDING MOTIONS

HILLMAN, District Judge.

Plaintiff, Zin-Plas Corporation, filed this action on January 18, 1985, to restrain defendants, Plumbers Quality Mfg. ("PQM"), Plumbers Quality Tool Mfg. Co., Inc. ("PQT"), and Marvin Freed, an individual, from importing from Taiwan imitations of plaintiff's tub spouts and showerheads, and selling them to plaintiff's customers.

Plaintiff's complaint is in six counts: (1) patent infringement; (2) false designation of origin (section 43(a) of the Lanham Act); (3) unfair competition/common law trademark infringement; (4) violation of the Michigan Consumer Protection Act; (5) misappropriation of trade values; and (6) unjust enrichment. This matter is presently before the court pursuant to plaintiff's motion for a preliminary injunction, defendants' motion to dismiss or transfer, and defendants' motion for partial summary judgment.

## FACTUAL BACKGROUND

Plaintiff, Zin-Plas Corporation, designs, develops and produces plumbing products. Among plaintiff's products are diverter tub spouts and showerheads. Plaintiff has sold these products for 14 years, with total sales for diverter spouts alone exceeding 8 million pieces and $20 million.

Plaintiff manufactures the plumbing products and advertises them extensively. Plaintiff sells the products to wholesalers and packagers. The packagers, in turn, distribute the products to major retailers, such as K-Mart, Montgomery Wards, and Ace Hardware. According to plaintiff, it is the retailers and wholesalers who recognize plaintiff's products as orginating with Zin-Plas, and who would most likely be

confused by imitations, especially since the copies and Zin-Plas products are both sold by the same packagers. Plaintiff contends that Marvin Freed is the moving force behind PQM, a Canadian corporation, and PQT, a Michigan corporation, and that PQT is in fact the alter ego of PQM. The record shows that PQT has sold its imported copies to one of plaintiff's customers, Brass-craft.

## DISCUSSION

A. *Plaintiff's Motion for Preliminary Injunction.*

Plaintiff's motion for preliminary injunction is based on section 43(a) of the Lanham Act, which provides:

"Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words *or other symbols* tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

[Emphasis added]. The intent of the Lanham Act is set forth in section 45 of the Act:

"The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce ... [and] to protect persons engaged in such commerce against unfair competition...."

■ Under Sixth Circuit precedent, a preliminary injunction is available to a Lanham Act plaintiff

"upon demonstrating, at a minimum, a likelihood of confusion among consumers as to the origin of the goods and services provided by defendant resulting from defendant's use of the disputed mark, as well as irreparable harm to the plaintiff's interests."

*Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261 (1985), at 1264 (*Frisch's II*). In *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 648 (6th Cir.1982) (*Frisch's I*), the Sixth Circuit adopted eight factors delineated by the Ninth Circuit as being helpful in demonstrating that there is a likelihood of confusion among consumers:

(1) strength of the mark;
(2) relatedness of the goods;
(3) similarity of the marks;
(4) evidence of actual confusion;
(5) marketing channels used;
(6) likely degree of purchaser care;
(7) intent in selecting the mark;
(8) likelihood of expansion of the product lines.

Based on these factors, I am satisfied that plaintiff has not established, by a preponderance of the evidence, that defendants' products are likely to cause confusion among the buying public.

■ The strength of a mark is determined by the mark's distinctiveness. "The more distinct a mark the more likely is the confusion resulting from its infringement, and, therefore, the more protection it is due." *Frisch's II* at 1264.

■ Here, plaintiff claims that the mark requiring protection is the non-functional shape of its showerheads and spouts. Although plaintiff concedes that this mark is "not inherently strong," it is well-established that weak marks, such as the non-functional shapes of plaintiff's plumbing products, are entitled to trademark protection if they have acquired a secondary meaning. *Hindu Incense v. Meadows,* 692 F.2d 1048, 1050 (6th Cir.1982).

■ A secondary meaning arises from a mental association between a product feature and a single, though perhaps anonymous, source of origin. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606, 214 U.S.P.Q. 1, 4 n. 11 (1982); *In the Matter of Certain Single Handled Faucets,*

Investigation No. 337–TA–167, p. 40. As stated by the Sixth Circuit in *American Fork and Hoe v. Stampit Corp.*, 125 F.2d 472, 475 (6th Cir.1942):

"A secondary meaning attaches to a given shape or form of article when that form is associated in the minds of prospective customers with the source from which the article came to such an extent that demand for the particular article depends upon the business reputation or standing of its maker."

Moreover, the mental association must be shown to exist in the mind of the public. *Inwood Laboratories*, 456 U.S. at 851 n. at 613 n. 11, 214 U.S.P.Q. at 4 n. 11. In *Astatic Corp. v. American Electronics, Inc.*, 201 U.S.P.Q. 411, 421 (N.D.Ohio 1978), the court rejected a survey attempting to show secondary meaning because it was not directed to the consuming public:

"The survey potentially included retailers, wholesalers, and other electronics industry members, who were personally associated with the marketing base station microphones, including the Astatic product. However, secondary meaning must be shown to exist in the minds of the consuming public, not in the minds of trade members."

[Citations omitted.]

Likewise, in the instant case, plaintiff has not established that the public has come to identify the shapes of plaintiff's products with a single source. Plaintiff does not advertise its products to the public. It sells its products to packagers,[1] such as Brasscraft. These packagers buy plumbing products from several manufacturers, package them in their own distinctive packages, and in turn sell them to retailers. When consumers select a plumbing product from a retailer who sells products packaged by Brasscraft, they assume they are buying a Brasscraft plumbing fixture, since that is the only name that appears on the package. (See plaintiff's Ex-

hibit # 23). This conclusion is supported by the deposition of Andrew Passman, a retail buyer for Rickel Home Centers:

"Q  Let's assume a distribution chain, like the one involved in the present where a manufacturer makes the product, sells it to a packager, and the packager then sells it to a retailer. Is the ultimate consumer aware of the manufacturer's name when he buys any of these packagers?

A  This kind of product?

Q  Yes.

A  No.

Q  The consumer does not know who made the product?

A  The true manufacturer or the presumed?  If they bought it from a company, if they saw Stanley Hardware on the package, they would presume that Stanley Hardware made it but Stanley—but this would be wrong in presuming that.

Q  So, they don't know who the true manufacture is?

A  No.  There's no way."

Thus, although a retailer or packager may identify the shape of plaintiff's showerheads or spouts with Zin-Plas, the evidence shows that the consumers would identify the packager, not Zin-Plas as the single source of all the products contained in its packages.

Plaintiff points out that some courts have held that secondary meaning can be inferred from the mere fact that a business competitor has consciously imitated a nonfunctional design feature. *See, e.g., Westward Co. v. Gem Products, Inc.*, 219 U.S. P.Q. 784, 788–89, 730 F.Supp. 943 (E.D. Mich.1983) (citing cases). The court, however, finds these cases inapposite where, as here, the marketing mechanism ensures that the buying public identifies an entity other than plaintiff as the single source of the products. Accordingly, I conclude that plaintiff's showerheads and spouts have

---

1.  Plaintiff also sells its products to original equipment manufacturers, and plumbing wholesalers, but defendants do not sell into these markets.  In addition, plaintiff recently began its own packaging company, Stem Search, which sells Zin-Plas products to retailers.

not acquired a secondary meaning among the buying public.

The second, third, and fifth factors, the relatedness of the goods, similarity of the marks, and the marketing channels used, focus on the similarity of the products and the manner in which they are placed in the stream of commerce. If related goods, bearing similar marks are sold through the same channels, there is a likelihood of confusion. Here, plaintiff's and defendants' products are identical in appearance and function, except that plaintiff's spouts bear the "ZP" logo. In addition, both manufacturers use the same indirect marketing channels (packagers) to sell their products to the public. Thus, the second, third and fifth factors militate in favor of finding a likelihood of confusion, although again, not necessarily among consumers.

The fourth factor is evidence of actual confusion. While evidence of actual confusion is the best evidence of a likelihood of confusion, the Sixth Circuit has held that a plaintiff need only show the likelihood of confusion to obtain a preliminary injunction. *Frisch's I.* 670 F.2d at 648. In the instant case, the only evidence of actual confusion occurred at the retail level of the distribution chain. Mr. Passman stated in his deposition that as a retail buyer for Stanley Hardware he was once confused about the source of a tub spout that resembled a Zin-Plas product. (Passman Deposition, pp. 32–35). On cross-examination, however, Mr. Passman admitted that the confusing imitation may have originated with a manufacturer other than defendants. (Passman Deposition, pp. 90–93). Indeed, the record suggests that defendants were not in business yet at the time Passman received the confusingly similar product.

In any event, there is no evidence of actual confusion among the buying public, nor is such confusion likely, since the consumer identifies the products with the packagers, not the manufacturers. Mr. Passman's deposition testimony on this point is unequivocal:

"Q If a packager who was purchasing a tub spout from Zin-Plas began purchasing a similar appearing tub spout from another manufacturer and put it in the same packager, would the ultimate consumer likely be confused by that switch?

A No."

Likewise, Mr. Bastion, President of Zin-Plas Corporation conceded that confusion among consumers is unlikely:

"Q Do you believe that a consumer that would see a display like that or displays like that would come to associate this design with the Zin-Plas Company?

A My guess is the consumers wouldn't know.

\*     \*     \*     \*     \*     \*

Q So you are not contending that there is any confusion at the retail trade, are you?

A A am not in the main, no."

(Hearing Transcript, pp. 82–83).

Plaintiff argues that the public is likely to be confused because plaintiff's and defendants' products are displayed side-by-side in identical packages. This argument, however, lays the blame for confusion on the wrong doorstep. Plaintiff would be liable for unfair competition if the shape of its products caused confusion among the buying public. Plaintiff's argument, however, demonstrates that it is the products' deceptive packaging, not their shape, which confuses the public. Plaintiff may have a cause of action against the packagers for misleading packaging, but defendants cannot be held liable for unfair competition based on conduct over which they exercise no control. Accordingly, I find that there is no evidence of public confusion, either actual or likely, as a result of defendants' imitative copies.

The sixth factor is the likely degree of purchaser care. The less care likely, the greater the likelihood of confusion. The evidence shows that defendants' customers, the packagers, exercise a great deal of care, and have no doubt about the source

of the product they buy. The evidence also shows that most retailers exercise a great deal of care concerning the products they buy from packagers, although some don't care who supplies the products. However, the retailers demand for plumbing products is a derived demand which comes from the demands of the ultimate purchasers, the do-it-yourself homeowners. As far as these ultimate consumers are concerned, there is little evidence that they are careful purchasers. Rather, they rely on the retailers to provide them with quality plumbing fixtures.

■■■ The seventh factor is defendants' intent in selecting the mark. As plaintiff points out, proof of wrongful intent alone may justify the granting of a preliminary injunction. Quoting the Fifth Circuit's decision in *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703–04 (5th Cir.1981), *cert. denied*, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982), the Sixth Circuit held in *Frisch's I*, 670 F.2d at 648, that a defendant's intent to adopt plaintiff's mark "is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff] *that fact alone may be sufficient to justify the inference that there is confusing similarity.*" (Citation omitted; emphasis added by the Sixth Circuit.) As this language indicates, however, intentional copying is not actionable under the Lanham Act absent evidence that the copying was done with the intent to derive a benefit from the reputation of another. The Sixth Circuit delineated the distinction between permissible copying and unfair competition in *West Point Mfg. Co. v. Detroit Stamping Co.*, 222 F.2d 581, 586 (6th Cir.1955):

> "where the copying by one party of another's product is not done to deceive purchasers and thus derive a benefit from another's reputation, but rather to avail oneself of a design which is attractive and desirable, a case of unfair competition is not made out."

Similarly, in *Astatic Corp.*, 201 U.S.P.Q. at 419, the court stated:

> "Section 1125(a) is limited in scope to merchandising practices equivalent to misuse of trademarks, that is the passing off or 'palming off' of one's goods as those of another."

There is simply no evidence of "palming off" in the instant case. The packagers know they are buying from defendants, not Zin-Plas, and the consumers don't identify the shape of the products with Zin-Plas or any other "single source," except perhaps the packager. In fact, defendants' products do not contain the "ZP" logo—the only mark that might have acquired a secondary meaning in the mind of the public. Thus, the instant case is distinguishable in a controlling respect from those cases cited by plaintiff where the infringer has copied both the product's outer configuration and its packaging, color scheme, or lettering. *See, e.g., Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir.1981); *Teledyne Industries, Inc. v. Windemere Products, Inc.*, 433 F.Supp. 710 (S.D.Fla.1977); *The Westward Co. v. Gem Products, Inc.*, 219 U.S.P.Q. 784, 570 F.Supp. 943 (E.D.Mich.1983). In those cases the defendant crossed the line of "fair" competition by intentionally copying aesthetic features that had acquired a secondary meaning, thereby hoping to benefit from the confusion caused among the buying public. By contrast, in the instant case, the evidence shows no more than that defendants copied plaintiff's spout and showerhead because they were attractive and accepted in the market. (Freed Deposition, pp. 140–141). Such competition is not prohibited by the Lanham Act.

The eighth factor is the likelihood of expansion of the product lines. The evidence produced thus far concerns only two product lines, showerheads and tub spouts. As to these product lines, the evidence shows that defendants will probably try to sell their copies to more of the packagers who currently buy from Zin-Plas. There is, however, no evidence, one way or the other, from which the court can determine whether defendants will try to copy other Zin-Plas product lines, besides the spouts and showerheads.

In sum, of the eight factors listed by the Sixth Circuit in *Frisch's I*, 670 F.2d at 648, for finding a likelihood of confusion, the first, fourth and seventh factors militate strongly against finding a likelihood of confusion, while the other factors point tentatively in the opposite direction. In *Frisch's II*, 759 F.2d 1261, 1264, the Sixth Circuit stated: "These factors are not immutable, but merely indicate the need for weighted evaluation of the pertinent facts in arriving at the legal conclusion of confusion." After weighing each of these factors in light of the basic purpose of the Lanham Act, I am satisfied that plaintiff has not established a likelihood of confusion by a preponderance of the evidence.

In addition, plaintiff has not established that failure to grant the preliminary injunction will cause irreparable injury. It is quite apparent that granting the injunction would put defendants out of business. Plaintiff, on the other hand, will not be forced out of business if the injunction is not granted. Thus far, plaintiff has lost one customer, albeit a large one, through market competition caused by defendants' cheaper imported products. This injury, while significant, is not irreparable.

Plaintiff portrays this action as a "microcosm of problems of international trade now facing the United States." I agree and am sympathetic to plaintiff's plight. Nevertheless, based on the facts before the court, plaintiff has failed to establish a violation of the Lanham Act. As a belated effort to obtain relief, plaintiff's post-hearing brief states, in the alternative, that it is entitled to a preliminary injunction based on its common law claim of misappropriation. The court declines to rule on this claim, however, since it raises factual issues that were not developed either at the hearing or in the briefs. Accordingly, plaintiff's motion for a preliminary injunction is denied.

### B. *Defendant's Motion to Dismiss or Transfer.*

Defendant moves to dismiss all counts with respect to PQM on the grounds that PQM, a Canadian corporation, has never transacted any business in the United States. In support of its motion, defendants submit the affidavit of Marvin Freed, President of PQM, which states that PQM has never sold any merchandise outside of Canada. Although denominated a motion to dismiss for lack of subject matter jurisdiction, defendant's motion should properly be characterized as one for summary judgment, since the court has considered matters outside the pleadings. Fed.R.Civ.P. 12(b) and 56. On a motion for summary judgment, movant bears the burden of showing conclusively that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60 (6th Cir.), *cert dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir.1974); Fed.R. Civ.P. 56(a). In determining whether issues of fact exist, "the inferences to be drawn from the underlying facts contained in [the affidavits, attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision, and if a disputed question of fact remains, the district court should deny the motion, and proceed to trial. *United States v. Articles of Device*, 527 F.2d 1008, 1011, *reh. denied*, 532 F.2d 1056 (6th Cir.1976).

In the instant case, plaintiff alleges that all defendants have infringed on plaintiff's patents by importing imitative copies which come within the scope of plaintiff's patents. Plaintiff further alleges that PQM, either by itself, or acting on concert with its alter ego, PQT, has sold infringing goods in the United States. Although defendants deny that PQM has sold any infringing products within the United States, the deposition of Marvin Freed, coupled with the evidence produced at the hearing, raises a material issue of fact

whether PQM and PQT are alter egos. Accordingly, summary disposition of plaintiff's claim against PQM is inappropriate, and defendants' motion to dismiss all claims against PQM is denied.

■ With respect to Marvin Freed, defendants argue that the patent infringement claim should be dismissed for the reason that venue is improper under 28 U.S.C. § 1400(b) since Freed is a United States citizen, last domiciled in Los Angeles, California, and does not reside in this district. Plaintiff, on the other hand, contends that venue is proper under 28 U.S.C. § 1391(d), which provides: "An alien may be sued in any district." I agree.

In *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972), the Supreme Court held that the special patent provisions of section 1400(b) were inapplicable to aliens because venue provisions were based on the defendant's resident and an alien generally has no residence within the United States. The rational of *Brunette Machine Works, Ltd.* should apply with equal force to a United States citizen without a United States residence, such as Freed. Indeed, the failure to apply the venue provisions of section 1391(d) to Freed would preclude plaintiff from bringing an action in any federal court against him. As the Supreme Court acknowledged in *Brunette Machine Works, Ltd.*, it is the responsibility of the judiciary to ensure that the venue statutes do not operate to deprive plaintiff of federal rights that have been granted by Congress. Accordingly, defendants' motion to dismiss the patent infringement claim against Freed is denied.

With respect to PQT, defendants argue that the patent count should be dismissed for improper venue, or, in the alternative, the entire action should be transferred to the Eastern District of Michigan where venue is proper. Defendants' motion is based on 28 U.S.C. § 1400(b), which establishes the exclusive venue for patent infringement actions against a United States corporation or citizen:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business."

■ The record shows that Marvin Freed, resident agent of PQT, resides in the Eastern District of Michigan and that PQT is a Michigan corporation with its principal place of business in the Eastern District of Michigan. Thus, by the plain meaning of section 1400(b), venue for the patent action against PQT lies only in the Eastern District unless this court can exercise a theory of pendent venue to maintain jurisdiction over the entire case because venue is proper on the other, non-patent counts of plaintiff's complaint.

This was addressed in *Hoffacker v. Bike House*, 540 F.Supp. 148 (N.D.Cal.1981). In *Hoffacker*, as in the instant case, plaintiff joined a patent infringement claim with a claim under the Lanham Act. Noting that the patent venue statute "represents an effort by Congress to restrict the number of forums available for the trial of patent cases," the court held that a party cannot circumvent the intent behind the statute merely by joining a related federal claim to a claim of patent infringement:

"it seems clear to this court that [*Goggi v. Outboard Marine Corp.*, 422 F.Supp. 361 (S.D.N.Y.1976)] represents judicial disapproval of the pendent venue theory. The better view which is represented by a growing line of authority holds that a court may not entertain a patent claim when the specific requirements of the venue statute are not satisfied notwithstanding proper venue over other related claims for relief."

*Id.* at 150. Likewise, in the instant case, plaintiff should not be permitted to circumvent the requirements of section 1400(b) by joining other claims with its patent infringement claim.

As another theory[2] for bringing the patent claim in this district, plaintiff argues

---

2. Plaintiff also argues that venue is proper in     this district under section 1391(d) because PQT

that a corporation resides in every district in the state of its incorporation. There is a split of authority on whether section 1400(b) can be so interpreted, with one case adopting plaintiff's interpretation of the statute. *See BMB Controls v. C.S.E. Automation Engineering,* 587 F.Supp. 1027 (W.D.La.1984). At least two other cases, however, have taken the opposite position, holding that

> "a corporation may be sued under the § 1400(b) residence provision only in the state of incorporation and, within that state, only in the judicial district where its principal place of business is located."

*Action Communication Systems, Inc. v. Datapoint Corp,* 426 F.Supp. 973, 974–75 (N.D.Tex.1977); *Hydro-Clear v. Aer-O-Flo,* 317 F.Supp. 1317 (N.D.Ohio 1970). I find that the reasoning of *Action Communication Systems* best comports with the plain meaning of section 1400(b). Accordingly, I find that venue as to the patent infringement count is improper in this district, 28 U.S.C. § 1404(a) states that

> "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In the instant case, defendant PQT has its only United States offices in the Eastern District of Michigan. Marvin Freed resides in Ontario, Canada, which is immediately adjacent to the Eastern District of Michigan and a significant distance away from the Western District. PQM likewise is located in Ontario, Canada. Although plaintiff resides in the Western District, most of the discovery will take place in either the Eastern District or Ontario, Canada. Thus, for the convenience of the parties and witnesses, I find that this action should be transferred to the Eastern District of Michigan.

is the alter ego of PQM. This argument is without merit. Plaintiff cannot rely on sales made by PQT in the United States in order to establish jurisdiction over PQM, and at the same

## C. *Defendants' Motion for Partial Summary Judgment.*

Defendants also move for partial summary judgment on Counts II–VI. Because this court has determined that venue for this action lies in the Eastern District of Michigan, it would be improper for the court to address the merits of defendants' motion for partial summary judgment. Accordingly, defendants' motion for partial summary judgment is denied without prejudice.

### CONCLUSION

For the reasons stated above, plaintiff's motion for a preliminary injunction is denied. Defendants' motion to dismiss the action against PQM is denied. Defendants' motion to transfer is granted. Defendants' motion for partial summary judgment is denied without prejudice.

time argue that the existence of PQT should be ignored for venue purposes because it is the alter ego of PQM.