**GENERAL MOTORS CORPORATION, a Delaware corporation, Plaintiff,**

v.

**AUTOVATION TECHNOLOGIES, INC. a South Carolina corporation, Defendant.**

**No. Civ.A. 04–70447.**

United States District Court, E.D. Michigan, Southern Division.

April 14, 2004.

Robert C.J. Tuttle, Brooks & Kushman P.C., Southfield, MI, Gregory D. Phillips, Scott R. Ryther, Howard, Phillips & Andersen, Salt Lake City, UT, for Plaintiff.

Anthony Hensley, Autovation Technologies, Charleston, SC, for Defendant.

means that the LLC is an unnecessary party to the instant action.

**FINAL JUDGMENT
AND PERMANENT
INJUNCTION**

O'MEARA, District Judge.

## I. INTRODUCTION

Plaintiff General Motors Corporation ("GM") brought this action against defendant Autovation Technologies, Inc. ("Defendant") to enjoin Defendant from advertising and selling foot pedals bearing counterfeits of the world-famous GM trademarks. In this lawsuit, GM alleges claims for federal trademark counterfeiting and infringement, federal trademark dilution, and false designation of origin or sponsorship under Sections 32(1), 43(c), and 43(a) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1114(1), 1125(c), and 1125(a), and trademark infringement under Michigan common law.

The parties stipulate to the following findings of fact and conclusions of law, and consent to entry of a permanent injunction as set forth below. Accordingly, the Court enters the following:

## II. FINDINGS OF FACT

Plaintiff GM is a Delaware corporation with its principal place of business in Detroit, Michigan.

Defendant Autovation Technologies, Inc. is a South Carolina corporation with its principal place of business in Charleston, South Carolina.

Defendant advertises and sells foot pedals that bear counterfeits of the GM Trademarks as set forth in the following side-by-side comparison of the counterfeit pedals (taken from Defendant's website at www.autovation.net) and GM's own Trademarks:

C-4 Racing Pedals – Polished CNC Machine Finish | C-4 Racing Pedals – Matte Finish

758

| USPTO Registration No. 2086434 |
|---|
| Covering goods and services relating to motor vehicles, namely automobiles, engines therefor and structural parts thereof. |

| Compare to registration no. 1880529 for word mark TAHOE® | TAHOE® in distinctive script as used by General Motors |
|---|---|
| Compare to registration no. 1598480 for word mark YUKON® | YUKON® in distinctive script as used by General Motors |
| Compare to registration no. 1039220 for word mark SILVERADO® | SILVERADO® in distinctive script as used by General Motors |

| Compare to registration no. 0579485 for word mark CORVETTE® | CORVETTE® in distinctive script as used by General Motors |
|---|---|

Defendant further provides a "Warranty/Disclaimer" found on Defendant's website at (www.autovation.net) that "Auto Vation Technologies, Inc. is not to be liable for any consequential, special or contingent damages, expense, or injury arising directly or indirectly from any defect in its goods or from the use of any goods, defective or otherwise, Auto Vation Technologies, Inc. and its affiliates will in no way be held responsible for any damages to any vehicle, persons or property for any reason whatsoever. The installer/owner assumes all risks involved with the installation and use of these products. The items represented by Auto Vation Technologies, Inc. *are for off-road use only* and no warranty is either EXPRESSED or IMPLIED. No warranty or representation is made as these products [sic] ability to protect the user from injury or death. The user shall determine the suitability of these products and assume all risks and responsibility in connection with their use. Automobile racing is a dangerous activity and the user shall assume all risk and responsibility. Installation of an item is an acknowledgement and acceptance of this disclaimer. Any warranties implied by law are limited in duration to the duration of this warranty." (emphasis in original)

For many years, GM has used a number of famous, registered trademarks in connection with GM's world-famous and high quality automobile products and services. GM has obtained several trademark registrations from the United States Patent and Trademark Office for these trademarks, including, but not limited to, the CORVETTE FLAG LOGO®, U.S. Registration Nos.2683719, 2750257, 2654528, 2242877, 2232346, and 2086434; the trademark CORVETTE®, U.S. Registration Nos. 0579485, 2463898, 2314485, 2311215, 2144177, 2105243, 1792602, 1495033, 1494171, 1494980, and 1467522; the Z06 LOGO®, US. Registration No. 2538434; the trademark Z06®, US. Registration No. 2485607; the trademark ZR–1®, U.S. Registration No. 2654525; the trademark FIERO®, U.S. Registration No. 1478600; the FIERO LOGO®, U.S. Registration No. 1478600; the trademark TAHOE®, U.S. Registration Nos. 2652036 and 1880529; the trademark SUBURBAN®, U.S. Registration Nos. 2652035 and 1490090; the trademark YUKON®, US. Registration No. 1598480; the trademark SIERRA®, U.S. Registration No. 1573202; the trademark SILVERADO®, U.S. Registration.No. 1039220; the trademark DENALI®, U.S. Registration No. 75056070; and the trademark Z28®, U.S. Registration No. 74586039 (hereinafter the "GM Trademarks"). These registrations are valid, unrevoked, subsisting, and incontestible, and constitute *prima facie* evidence of GM's exclusive ownership of the GM Trademarks.

GM has used the GM Trademarks since long before the acts of Defendant described herein. GM has spent hundreds of millions of dollars and has expended significant effort in advertising, promoting, and developing the GM Trademarks throughout the United States and the world. As a result of such advertising and expenditures, GM has established considerable goodwill in the GM Trademarks. The GM Trademarks have become widely known and recognized throughout the world as symbols of high quality, reliable automobile products and services. The GM Trademarks are famous and distinctive, and have come to be associated by the consuming public exclusively with the products marketed by GM. The GM Trademarks are invaluable assets of substantial and inestimable worth to GM.

Defendant is in the business of marketing and selling parts, products, and services for GM vehicles on the Internet and through more traditional channels, such as by catalog, telephone, and mail order. In

marketing their parts, products, and services, Defendant is violating GM's trademark rights by advertising and selling products and parts that bear counterfeits of the GM Trademarks. Defendant's foot pedals are relatively inexpensive goods, selling in the $55—$65 range.

GM sells foot pedals and replacement pedals for GM vehicles that bear the GM Trademarks and/or are sold in packaging bearing the GM Trademarks. GM's foot pedals compete directly with Defendant's foot pedals. In addition, GM and GM's authorized dealers advertise and sell genuine GM parts on official GM and GM Dealer websites on the Internet.

Defendant is not in any way affiliated with, authorized, or sponsored by GM and has no authority to use the GM Trademarks. Despite its lack of affiliation, authorization, or sponsorship, Defendant unlawfully uses the GM Trademarks Marks as alleged above.

Defendant's misappropriation of the GM Trademarks constitutes a misappropriation of the GM Trademarks and associated goodwill, and is likely to cause potential purchasers of Defendant's products and services, as well as the public at large, to believe that Defendant's services and products are affiliated with, authorized by, sponsored by, or endorsed by GM. In addition, Defendant's wrongful use of the GM Trademarks dilutes, tarnishes, and whittles away the distinctiveness of the GM Trademarks.

### III. CONCLUSIONS OF LAW

The Court has subject matter jurisdiction of GM's First, Second, and Third Claims for relief asserted in the Complaint under 28 U.S.C. §§ 1331 and 1338(a), as such claims for relief are brought under federal trademark laws, specifically sections of the Lanham Act, 15 U.S.C. § 1051 et. seq. This Court has supplemental subject matter jurisdiction of GM's Fourth Claim for relief under 28 U.S.C. § 1367. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) & (2).

This lawsuit is closely analogous to *Ford Motor Co. v. Lloyd Design Corp.*, 184 F.Supp.2d 665, 667 (E.D.Mich.2002), where Judge Roberts granted a permanent injunction enjoining the use of various Ford, Jaguar, and Aston Martin trademarks on floor mats, and granted Ford its attorneys' fees and costs because of "Defendant's flagrant disregard for Plaintiffs' trademark rights." In granting summary judgment, Judge Roberts ruled that Lloyd's "intentional[ ] copying [of] Plaintiffs' trademarks onto its mats" was "alone ... sufficient to find a likelihood of confusion" on Ford's trademark counterfeiting and infringement claims and on Ford's false designation/unfair competition claims. 184 F.Supp.2d at 673. Judge Roberts further ruled that Lloyd's use of Ford's trademarks on floor mats diluted those marks because such "use of Ford's marks would likely cause 'blurring' of the source of goods bearing the marks.' " *Id.* at 678.

In this lawsuit, GM's success on its trademark counterfeiting and infringement claim, and on GM's false designation/unfair competition claim, turns on its ability to show that Defendant's use of counterfeits of the GM Trademarks on its pedals is likely to cause confusion as to source, sponsorship, affiliation, or endorsement. Under GM's claim for federal counterfeiting and trademark infringement, likelihood of confusion is the central element. *See* 15 U.S.C. § 1114; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Likelihood of confusion is also the critical element of GM's claim for false designation of origin/unfair competition under 15 U.S.C. § 1125(a), *see Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647–48 (6th Cir.1982).

GM has established a likelihood of confusion on these claims under two alternative theories. First, likelihood of confusion is presumed where an identical trademark is intentionally copied by the infringer on competing goods. Second, application of the traditional factors for determining likelihood of confusion to the undisputed facts leads to only one plausible conclusion–that confusion is inevitable.

**A. Defendant's Use of Precise Counterfeits of the GM Trademarks on Directly Competing Goods Gives Rise to a Presumption of a Likelihood of Confusion.**

█ In many cases, a likelihood of confusion can be established only by evaluating the degree of similarity between two distinct marks in light of a multi-factored inquiry into the extent of competition, overlap in marketing channels, characteristics of potential purchasers, etc. (*e.g.*, the use of the mark "Delta" by Delta Airlines and Delta Faucets). However, such multi-factored balancing is unnecessary in cases like this one where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods. As the Sixth Circuit has noted, in this latter set of cases, "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design 'with the intent to derive a benefit from the reputation of another.'" *Ford Motor Co.* v. *Lloyd,* 22 Fed.Appx. 464, 467, 2001 WL 1356137, *4 (6th Cir.2001) (quoting *Esercizio v. Roberts,* 944 F.2d 1235, 1243, 20 U.S.P.Q.2d 1001 (6th Cir.1991) (citing *Zin–Plas Corp. v. Plumbing Quality AGF Co.,* 622 F.Supp. 415, 420 (W.D.Mich. 1985))). *See also Dive N' Surf, Inc. v. Anselowitz,* 834 F.Supp. 379, 382 (M.D.Fla. 1993) (where marks are "substantially similar as to both design and use[,]" "the court presumes that defendant's counterfeit items caused public confusion in the marketplace"); *Polo Fashions v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987) (presumption arises when counterfeit symbols are substantially identical to genuine symbols and are used in the same manner as genuine symbols).

The Ninth Circuit has explained the difference in the two approaches as follows:

> When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. When the goods are related, but not competitive, several other factors are added to the calculus.

*AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979).

In its Verified Complaint, GM has established that Defendant uses precise counterfeits of the GM Trademarks on pedals that compete directly with GM's own genuine pedals. Indeed, the Court need look no further than the marks themselves to determine that Defendant has gone out of its way to misappropriate precise counterfeits of the GM Trademarks. *See* Verified Complaint ¶ 1.

**B. Even Without the Presumption of Confusion, the Same Result is Dictated by Application of the Factors for Determining Likelihood of Confusion.**

█ Although an application of the traditional factors for determining likelihood of confusion is unnecessary in this case, the analysis nevertheless confirms that consumer confusion is likely. Where likelihood of confusion is not presumed, the following factors are considered:

1. strength of the senior mark; 2. relatedness of the goods or services; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care;

7. the intent of defendant in selecting the mark; and 8. likelihood of expansion of the product lines.

*Lloyd,* 184 F.Supp.2d at 669 (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center,* 109 F.3d 275, 280 (6th Cir.1997)). As Judge Roberts ruled in relying upon the Sixth Circuit's decision in *Daddy's Junky Music Stores,* the Sixth Circuit has "emphasized that these factors are a guide and that they need not be analyzed with mathematical precision." *Id.* "Similarly, the court in *Esercizio v. Roberts,* 944 F.2d 1235, 1242 (6th Cir.1991), stated 'A party claiming infringement need not show all, or even most, of these factors in order to prevail.'" *Id.* In this case, the factors weigh heavily in favor of a finding of a likelihood of confusion.

### 1. The GM Trademarks are Strong.

Similar to Judge Robert's ruling that the numerous Ford trademarks (such as FORD®, JAGUAR®, ASTON MARTIN®, LINCOLN® MERCURY®, MUSTANG®, BRONCO®, TAURUS®, WINDSTAR®, EXCURSION®, EXPEDITION®, NAVIGATOR®, MOUNTAINEER®, THUNDERBIRD®, F–150®, F–250®, F–350®, etc.) are strong marks, *Lloyd,* 184 F.Supp.2d at 670, the trademarks set forth above in Paragraph 8 such as CORVETTE®, FIERO®, TAIIOE®, SUBURBAN®, YUKON®, SIERRA®, SILVERADO®, DENALI®, etc. are strong marks entitled to trademark protection. Moreover, as Judge Roberts held, "Defendant's intentional copying of Plaintiffs' trademarks is strong evidence of their secondary meaning." *Lloyd,* 184 F.Supp.2d at 670. Without dispute, this "strength" factor weighs in favor of GM.

### 2. The Parties' Goods–Pedals–Are Related.

There is no dispute that both parties in this case make and sell pedals that com-

pete directly. Verified Complaint ¶ 11. Thus, this factor weighs in GM's favor.

### 3. Defendant's Marks Are Identical to the GM Trademarks.

The "similarity-of-the-marks" factor was devised by courts because many infringement cases involve the use of a mark that is not identical to, but is alleged to be confusingly similar to, the plaintiff's mark. Unlike those cases, based upon the side-by-side comparison set forth above, Defendant uses the GM Trademarks in the identical manner that GM uses the GM Trademarks—i.e., the Defendant uses counterfeits of the GM Trademarks. Thus, this factor weights in GM's favor.

### 4. Evidence Of Actual Confusion Is Not Necessary.

Evidence of actual confusion is not required to make out an infringement claim. *Frisch's Restaurants, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1266 (6th Cir.1985); *see also Wynn Oil v. Thomas,* 839 F.2d 1183, 1188 (6th Cir.1988). "[D]ue to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant." *Pita Delight, Inc. v. Salami,* 24 F.Supp.2d 795, 801 (E.D.Mich.1998). *Accord, Lloyd,* 184 F.Supp.2d at 671.

### 5. Defendant Uses Similar Marketing Channels.

As GM and its authorized dealers increase their sale of genuine GM parts on their websites on the Internet, GM's use of the Internet will expand. GM and GM's authorized dealers market their parts and products on the Internet. Verified Complaint ¶ 11. Thus, Defendant and GM use similar marketing channels.

### 6. Purchasers Do Not Exercise Much Care.

Defendant sells its pedals for approximately $55–65. Verified Complaint ¶ 10.

As Judge Roberts noted in *Lloyd*, when products sell for $100 or less, "the average purchaser is not likely to have any particular expertise or sophistication regarding the product," and thus is "unlikely to exercise a great deal of care." *Lloyd*, 184 F.Supp.2d at 672. Thus, this factor also favors GM.

### 7. Defendant Intends to Profit from GM's Goodwill.

The side-by-side comparison set forth above demonstrates that Defendant intentionally copied not only GM's Trademarks, but also the design and logos of such GM Trademarks. As Judge Roberts noted, "[a] likelihood of confusion is presumed when a trademark design is intentionally copied." *Lloyd*, 184 F.Supp.2d at 672 (citing *Esercizio* at 1243). Moreover, as the Sixth Circuit held in *Lloyd*, "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design 'with the intent to derive a benefit from the reputation of another.'" *Lloyd*, 22 Fed.Appx. at 467, 2001 WL 1356137, *4 (quoting *Esercizio* at 1243). Thus, this factor favors GM and the intentional copying of the GM Trademarks in and of itself is sufficient for GM to prevail in this matter.

### 8. Likelihood of Expansion of Product Lines.

In cases where the parties' products are not in direct competition, courts may consider whether either party may expand its product line into an area in which the other party operates. In this case, the parties are already in direct competition in the same market. Accordingly, this factor must be weighed heavily in favor of GM.

### C. Defendant Dilutes Plaintiffs' Trademarks

■ The Federal Trademark Dilution Act (FTDA) defines the term "dilution" to mean "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127 (emphasis added). "For a plaintiff to succeed on a federal claim of dilution '(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark.'" *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir.2000) (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2d Cir.1999)).

■ GM's dilution claim easily succeeds under this standard. As Judge Roberts found in *Lloyd*, "the general public recognizes" trademarks such as those at issue in this lawsuit, and such marks "are sufficiently famous. And, it is otherwise undisputed that Defendant began using [GM's] marks after they became famous. Therefore, [GM has] satisfied the first and fourth element necessary to prove an FTDA claim." 184 F.Supp.2d at 679. Moreover, as Judge Roberts found, automotive trademarks satisfy the "distinctiveness" element. *Id.* Finally, like the placement of Ford trademarks on floor mats in *Lloyd*, Defendant's use of the GM Trademarks on pedals "would likely cause 'blurring' of the source of goods bearing the marks," and thus satisfies the final element of dilution. 184 F.Supp.2d at 678.

As the Supreme Court recently clarified, the FTDA "requires a showing of actual dilution, rather than a likelihood of dilution," but "direct evidence of dilution such as consumer surveys" is not "necessary" where "actual dilution can reliably be proven through circumstantial evidence," such as "where the junior and senior marks are

identical." *Moseley v. V. Secret Catalogue,* 537 U.S. 418, 123 S.Ct. 1115, 1124–25, 155 L.Ed.2d 1 (2003). GM has presented reliable, circumstantial proof of actual dilution. GM's evidence establishes actual dilution in that Defendant has used marks that are identical to the world-famous GM Trademarks.

The GM Trademarks are among the most famous and world-renowned marks. GM has spent hundreds of millions of dollars and has expended significant effort in advertising, promoting, and developing the GM Trademarks throughout the United States and the world. As a result of such advertising and expenditures, GM has established considerable goodwill in the GM Trademarks. The GM Trademarks have become widely known and recognized throughout the world as symbols of high quality, reliable automobile products and services. Verified Complaint at ¶ 9. Quite simply, the GM Trademarks are the prototypically "famous" marks that Congress had in mind when it expanded federal trademark protection to encompass protection from dilution. See *Michael Caruso & Co., Inc. v. Estefan Enterprises, Inc.,* 994 F.Supp. 1454, 1463 (S.D.Fla.1998) (concluding that Congress intended to protect from dilution marks that "rise to the level of 'Buick' or 'Kodak.' ").

Nor can there be any dispute that Defendant is making commercial use of the GM Trademarks after those marks became famous or that Defendant's use of counterfeits of the marks presents a likelihood of diluting the distinctive value of those marks. As one court has stated: "The purpose of the [dilution] law is 'to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion.' " *Genovese Drug Stores, Inc. v. TGC Stores, Inc.,* 939 F.Supp. 340, 349 (D.N.J.1996) (quoting Ringling Bros, Barnum . & Bailey Combined *Shows, Inc. v. B.E. Windows Corp.,* 937 F.Supp. 204, 208 (S.D.N.Y.1996), *reh'g* denied, 1996 WL 438174 (S.D.N.Y.1996)). As Professor McCarthy has concluded in describing the theory of dilution:

> The theory of dilution by blurring is that if one small user can blur the sharp focus of the famous mark to uniquely signify one source, then another and another small user can and will do so. Like being stung by a hundred bees, significant injury is caused by the cumulative effect, not by just one. ... This is consistent with the classic view that the injury caused by dilution is the gradual diminution or whittling away of the value of the famous mark by blurring uses by others. It is also consistent with the rule in the likelihood of confusion cases that even a small infringer will not be permitted to "nibble away" at the plaintiff's reputation and goodwill.

4 McCarthy § 24–94.

Defendant's use of the GM Trademarks clearly "dilutes" those marks in the sense of lessening their capacity to identify only products authorized by, sponsored by, or somehow affiliated with GM. Thus, GM is also entitled to judgment on its dilution claims.

### JUDGMENT AND PERMANENT INJUNCTION

Based on the foregoing, Defendant, its owner, shareholders, officers, directors, employees, and successors, and all persons in active concert or participation with any of them, shall be and are hereby ordered and permanently enjoined and restrained as set forth below. WHEREFORE, IT IS HEREBY ORDERED THAT:

A. Defendant and its owners, shareholders, officers, directors, employees, and successors, and all persons acting in concert or in participation with any of them, are enjoined from:

(1) imitating, copying, or making unauthorized use of any of the GM Trademarks or trade dress;

(2) importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of the GM Trademarks or trade dress;

(3) using any simulation, reproduction, counterfeit, copy or colorable imitation of the GM Trademarks or trade dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service or product;

(4) using any false designation of origin or false description including, without limitation, any letters or symbols constituting the GM Trademarks or trade dress, or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant is in any manner associated or connected with GM or the GM Trademarks, or is sold, manufactured, licensed, sponsored, approved or authorized by GM;

(5) transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendant's possession, custody or control bearing a design or mark substantially identical to any or all of the GM Trademarks or trade dress;

(6) engaging in any other activity constituting unfair competition with GM with respect to the GM Trademarks or trade dress, or constituting an infringement of any or all of the GM Trademarks, or of GM's rights in, or to use or exploit, any or all of the GM Trademarks or trade dress; and

1. (7) instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (6) above.

B. Defendant and its owners, shareholders, officers, directors, employees, and successors, and all persons acting in concert or in participation with any of them, are ordered to, within thirty (30) days after the entry of this Final Judgment and Permanent Injunction, deliver to GM for destruction all products, parts, labels, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing or using any or all of the GM Trademarks, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118.

C. Defendant and its owners, shareholders, officers, directors, employees, and successors are ordered to serve upon GM's counsel within thirty (30) days after entry of this Final Judgment and Permanent Injunction, pursuant to 15 U.S.C. § 1116, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above. In addition, Defendant is ordered to serve upon GM's counsel within thirty (30) days after entry of this Final Judgment and Permanent Injunction a written accounting signed under oath by an officer of Defendant accounting for and detailing gross revenues received or to be received from all sales of products bearing any of the GM Trademarks or counterfeits of the GM Trademarks from January 1, 1999 through the date of the accounting. Defendant shall pay GM within five (5) days of such accounting twenty-five percent (25%) of the gross revenue received from the sale of all pedals bearing the GM Trademarks or

counterfeits of the GM Trademarks from January 1, 1999 through the date of the accounting.

D. Defendant is ordered to permit GM, and/or auditors for GM, to audit and inspect the books and records of Defendant for a period of six months after entry of this Final Judgment and Permanent Injunction to determine the scope of Defendant's compliance with this Final Judgment and Permanent injunction. Any information revealed during such audit or inspection shall not be disclosed except to those persons/entities necessary to address a purported violation of this Final Judgment and Permanent Injunction.

E. Each of the parties shall bear its own attorneys' fees and costs.

SO ORDERED AND ADJUDGED.