**SAVIN CORPORATION,**
Plaintiff–Appellant,

v.

**THE SAVIN GROUP, Savin Engineers, P.C., Savin Consultants, Inc. d/b/a Savin Engineers, P.C., and JMOA Engineering, P.C., Defendants–Appellees.**

Docket No. 03–9266.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 25, 2004.

Decided: Dec. 10, 2004.

Jeffrey L. Glatzer (David A. Einhorn, John H. Doyle, III, and James M. Andriola, on the briefs), Anderson, Kill & Olick, P.C., New York, N.Y., for Plaintiff–Appellant.

David A. Beke (Alfred L. D'Isernia and Sarah A. McKune, on the brief), Ford Marrin Esposito Witmeyer & Gleser, L.L.P., New York, N.Y., for Defendants–Appellees.

Before: MESKILL, MINER, and KATZMANN, Circuit Judges.

MINER, Circuit Judge.

Plaintiff-appellant, Savin Corporation, appeals from a summary judgment entered in the United States District Court for the Southern District of New York (Scheindlin, J.) dismissing Savin Corporation's claims alleging: (1) trademark dilution, in violation of both the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c), and New York General Business Law § 360–1, and (2) trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114. On appeal, Savin Corporation argues that the District Court erred in holding that (i) the FTDA requires a plaintiff to demonstrate evidence of actual dilution even where the court finds that the at-issue marks are identical; (ii) the standard for dilution under New York General Business Law § 360–1 is the same as the standard for dilution under the FTDA; and (iii) there is no genuine issue of material fact regarding whether the defendants-appellees' use of certain at-issue marks creates a likelihood of confusion with the plaintiff-appellant's marks.

We agree with the plaintiff-appellant that the District Court erred in its analysis and disposition of the FTDA and state-law dilution claims, but we find no error in the District Court's analysis of the trademark infringement claim. We therefore affirm the judgment of the District Court in part, vacate in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

### A. *The Parties*

The following facts, which are essentially undisputed, are derived primarily from the District Court's presentation of background facts, in which we discern no clear error. Plaintiff-appellant, Savin Corporation ("Plaintiff"), a Delaware corporation, was founded in 1959 and has its principal place of business in Stamford, Connecticut. Plaintiff is engaged in the business of marketing, selling, and distributing state-of-the-art business equipment for commercial, business, and home-office use. Plaintiff's products include color and digital-imaging technology for photocopying, printing, facsimile, and other systems. Plaintiff also offers consulting and support services related to information technology and office management. Plaintiff's products are sold through seventeen company-owned branches consisting of over sixty sales and service offices and over 250 trained dealers throughout the United States. Plaintiff realizes annual revenues of over $675 million from sales of its products and services in the United States. Plaintiff's largest customers are in the government, education, and military sectors.

Max Lowe, Savin Corporation's founder, named the company after his brother-in-law, Robert Savin. Since 1959, the company has used the trade name "Savin" or "SAVIN" in various forms in connection with various products and services. Plaintiff's ownership of the "Savin" mark is incontestable with respect to: (i) copy paper and developing liquid; (ii) photocopying machines and parts thereof; and (iii) maintenance and repair services for photocopiers and word processors. The company also owns the mark "SAVIN" for facsimile machines.

During 2002 alone, Plaintiff spent over $20 million in advertising its products and services, which are regularly featured in print and television advertisements, trade magazines, and tradeshow promotions worldwide. Plaintiff's advertisements have appeared in magazines such as *Newsweek*, *Time*, and *Business Week*. Plaintiff also maintains an active website—www.savin.com—through which Plaintiff markets and promotes its products and services. This website address is featured prominently in many of Plaintiff's advertisements.

Defendants-appellees are The Savin Group; Savin Engineers, P.C.; Savin Consultants, Inc. d/b/a Savin Engineers, P.C. ("Savin Consultants"); and JMOA Engineering, P.C. ("JMOA") (collectively, "Defendants" or "Savin Engineers"). JMOA and Savin Engineers, P.C. are New York-based professional engineering corporations with offices in Pleasantville, Syracuse, and Hauppauge, New York; together, the two corporations comprise The Savin Group. Savin Consultants is a New Jersey-based corporation that was incorporated in 1987 and that ceased to be actively engaged in business after Savin Engineers, P.C. was incorporated in 1988. Defendants provide professional engineering consulting services, in particular, civil-engineering consulting services to entities concerned with environmental waste management. Defendants also offer professional engineering services in connection with inspecting buildings and providing building-maintenance plans.

Dr. Rengachari Srinivasaragahavan, whose nickname since college has been "Nivas" (referred to in this opinion as "Dr. Nivas"), is the founder and sole shareholder of each of the defendant-appellee corporations. Dr. Nivas chose the name "Savin" by spelling "Nivas" backwards. Since 1987, Defendants have continually used the name "Savin" in commerce. Defendants did not perform a search or investigation prior to adopting and launching their trade names, and only became aware of Plaintiff's products and services about ten years ago.

Defendants have registered the Internet domain names www.thesavingroup.com and www.savinengineers.com. These websites, which became accessible after June 2001, provide information about the engineering services offered by Dr. Nivas' companies. Defendants did not perform a search or investigation prior to adopting and launching these websites, but were aware of Plaintiff's www.savin.com domain name prior to registering Defendants' domain names. Other than through these websites, Defendants have not advertised their services in any general interest media.

In July 2002, Plaintiff discovered Defendants' domain name registrations and proceeded promptly to send two successive cease-and-desist letters to Defendants, who elected to take no action in response to those letters.

In May 2003, one of Plaintiff's executives was attending a chamber of commerce meeting in Stamford, Connecticut, when another attendee, a vendor who had once sold products to Defendants, approached and asked the executive, who was wearing a name tag that displayed the name "Savin," if she was associated with Savin Engineers.

Presently, there are several hundred other businesses using the name "Savin" in various industries and capacities, including, for example, a general contractor in Newington, Connecticut (Savin Brothers, Inc.), a dry cleaner in Chesapeake, Virginia (Savin Cleaners), and a dentist in Glencoe, New York (Savin Dental Associates). Plaintiff has been aggressive in protecting its marks, with respect to both traditional media and the Internet.[1]

## B. The Claims

On November 25, 2002, Plaintiff filed a complaint (the "Complaint") in the United States District Court for the Southern District of New York, alleging, inter alia, violations of both the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c), and New York General Business Law § 360–1; and trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114.[2] Following discovery, both sides moved for summary judgment. On October 24, 2003, in a forty-four-page, unpublished opinion and order, the District Court denied Plaintiff's motion, granted Defendants' motion in its entirety, and dismissed all claims in the Complaint. *See*

---

1. *See, e.g., Savin Corp. v. Rayne,* 00 Civ. 11728, 2001 U.S. Dist. LEXIS 20581, at *11 (D.Mass. Mar. 26, 2001); *Savin Corp. v. Copier Dealers, Inc.,* Case No. FA 0304000155903, (Nat'l Arb. Forum, July 9, 2003); *Savin Corp. v. Savinsucks.com,* Case No. FA 0201000103982, (Nat'l Arb. Forum, Mar. 5, 2002).

2. In the Complaint, Plaintiff also alleged false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); violation of the Anti–Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); violation of the New York Unfair Businesses Act, N.Y. Gen. Bus. L. § 349; violation of the New York False Advertising Act, N.Y. Gen. Bus. L. § 350; and unfair competition. Plaintiff has since abandoned these claims.

*Savin Corp. v. Savin Group,* 02 Civ. 9377, 2003 WL 22451731 (S.D.N.Y. Oct.24, 2003).

With respect to Plaintiff's infringement claim under the Lanham Act, the court found that while "one of the *Polaroid* factors weigh[ed] in [P]laintiff's favor," [3] the "overwhelming number of factors" as well as the "Internet initial interest confusion factor" weighed in Defendants' favor. *Id.* at *13. Accordingly, the court concluded, Defendants were entitled to summary judgment on the infringement claim. *Id.*

The District Court concluded that Plaintiff's claim of a violation of the FTDA had to be dismissed as well, because, the court found, Plaintiff had "failed to raise a material issue of fact with regard to an essential prong of the dilution test." *Id.* at *15. The court found, in particular, that Plaintiff had failed to produce any evidence of actual dilution—an essential element of a claim of a violation of the FTDA—other than that Defendants had used a junior mark that was identical to Plaintiff's senior mark. Thus, the court held, Plaintiff had failed to produce sufficient evidence for a rational jury to find that actual dilution had occurred. *Id.* at *14. The court did find, however, that Plaintiff had produced sufficient evidence to create a triable issue of fact on the other contested elements of an FTDA claim—the distinctiveness and fame of the senior mark. *Id.*

Finally, with respect to the state-law dilution claim, the court found that "[t]he standards for dilution under Section 360–1 [were] essentially the same as that under [the FTDA]"; that Plaintiff had "failed to produce sufficient evidence to create a triable issue under the FTDA"; and, thus, that "the Section 360–1 claim also fail[ed]." *Id.* at *16 (internal quotation marks omitted). Final judgment was entered on Oc-

tober 31, 2003, dismissing the Complaint, and this timely appeal followed.

## DISCUSSION

### I. *The FTDA Claim*

Plaintiff argues that the District Court "erred in holding. that, even though the marks at issue are identical, [Plaintiff] was required to demonstrate circumstantial evidence of actual dilution . . . to maintain its claim under the [FTDA]." Defendants, on the other hand, argue that the District Court was correct in dismissing the FTDA claim because Plaintiff had "failed to tender admissible evidence to *prima facie* prove any of [the requisite] elements" of a claim under the FTDA.

The FTDA "permits the owner of a qualified, famous mark to enjoin junior uses throughout commerce, regardless of the absence of competition or confusion." *TCPIP Holding Co. v. Haar Communications Inc.,* 244 F.3d 88, 95 (2d Cir. 2001); *see* 15 U.S.C. § 1127. Indeed, "[o]ne circuit has characterized the Dilution Act as coming 'very close to granting rights in gross in a trademark.' " *TCPIP Holding Co.,* 244 F.3d at 95 (quoting *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 875 (9th Cir.1999)). Specifically, the FTDA provides that "[t]he owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). Thus, to establish a violation of the FTDA, a plaintiff must show that:

**3.** *See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961), *and* discussion *infra* Part III.

(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.

*Pinehurst, Inc. v. Wick*, 256 F.Supp.2d 424, 431 (M.D.N.C.2003); *see* 15 U.S.C. § 1125(c); *Ringling Bros. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 452 (4th Cir. 1999); *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir.1998).[4]

The Supreme Court has made clear that a plaintiff seeking to take advantage of the broad rights afforded under the FTDA must show, as an essential element of an FTDA claim, "actual dilution, rather than a likelihood of dilution." *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 433, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003). The theory of "dilution by blurring," the form of dilution particularly relevant to the case at bar, has been described by Professor McCarthy as follows:

> [I]f one small user can blur the sharp focus of the famous mark to uniquely signify one source, then another and another small user can and will do so. Like being stung by a hundred bees, significant injury is caused by the cumulative effect, not by just one. . . . This is consistent with the classic view that the injury caused by dilution is the gradual diminution or whittling away of the value of the famous mark by blurring uses by others. It is also consistent with the

rule in the [likelihood-of-confusion] cases that even a small infringer will not be permitted to "nibble away" at the plaintiff's reputation and goodwill.

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:94 (4th ed. Supp.2004) (footnotes omitted); *accord General Motors Corp. v. Autovation Techs., Inc.*, 317 F.Supp.2d 756, 764 (E.D.Mich.2004).

### A. Fame and Distinctiveness

 In this Circuit, to sustain a claim under the FTDA, in addition to actual dilution, a plaintiff must show that the senior mark possesses both a "significant degree of *inherent* distinctiveness" and, to qualify as famous, "a high degree of . . . *acquired* distinctiveness." *TCPIP Holding Co.*, 244 F.3d at 97, 98 (emphasis added). Although a plaintiff must show a preponderance of evidence on each element of a claimed violation of the FTDA in order ultimately to prevail on such a claim, *see Moseley*, 537 U.S. at 434, 123 S.Ct. 1115, the element of fame is the key ingredient. This is because, among the various prerequisites to an FTDA claim, the one that most narrows the universe of potentially successful claims is the requirement that the senior mark be truly famous before a court will afford the owner of the mark the vast protections of the FTDA.[5]

 Indeed, actionable dilution under the FTDA is defined as "the lessening of the capacity of a *famous* mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the fa-

---

**4.** Here, there is no dispute that Defendants' use of the at-issue marks has been in commerce and postdates Plaintiff's use of the marks.

**5.** In other words, a plaintiff owning only less-than-famous marks will receive no protection under the FTDA, even if that plaintiff can

prove that the use of an identical junior mark has in fact lessened the capacity of the senior mark to identify and distinguish the plaintiff's goods or services—i.e., that actual dilution has occurred. *See TCPIP Holding Co.*, 244 F.3d at 97–98.

mous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127 (emphasis added). This requirement reflects the purpose of the FTDA, which "is to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." *Genovese Drug Stores, Inc. v. TGC Stores, Inc.*, 939 F.Supp. 340, 349 (D.N.J.1996) (internal quotation marks omitted). Accordingly, where it is possible for a district court to determine in the first instance the issue of the famousness of a senior mark, the court would be well advised to do so. Indeed, this will often obviate the costly litigation of potentially much thornier issues, such as whether actual blurring or tarnishing of the senior mark has in fact occurred or, as in the instant case, whether a junior and senior mark that are each used in varying ways in different contexts and media are in fact "identical" for purposes of the FTDA.

■ Here, the District Court held that Plaintiff had "created a material issue of fact as to the distinctiveness and fame of its marks." 2003 WL 22451731, at *14. Although Defendants chose not to cross-appeal this conclusion, they nonetheless contend that the lack of inherent distinctiveness and fame in Plaintiff's marks provides an alternate basis upon which this Court should affirm the summary judgment granted by the District Court. Of course, "we may affirm the [D]istrict [C]ourt's order of summary judgment on any ground that finds adequate support in the record." *Eichelberg v. Nat'l R.R. Pas-*

*senger Corp.*, 57 F.3d 1179, 1186 n. 6 (2d Cir.1995). We need not exercise that power here, however, as we see no error in the District Court's conclusion that Plaintiff has raised genuine issues of fact with regard to the fame and distinctiveness of its marks.

■ With respect to fame, or acquired distinctiveness, we recognize that the at-issue marks ultimately may be found to possess only a degree of "niche fame." [6] Nevertheless, we agree with the District Court's conclusion that Plaintiff has shown "more than a mere scintilla of evidence" of fame, which is a sufficient quantum of proof to submit the question to the finder of fact. 2003 WL 22451731, at *14. In particular, the court found that:

> [Plaintiff] spent over $20 million on advertising in 2002 and has achieved annual revenues of $675 million. Further, [P]laintiff's products and services are regularly featured in print advertisements, trade magazines[,] and tradeshow promotions. Plaintiff's advertisements have appeared in well known magazines such as *Newsweek, Time,* and *Business Week.*

*Id.* (citations omitted). These are sufficient indicators of fame to withstand a summary judgment challenge to a claim under the FTDA. *Cf. Nabisco, Inc. v. PF Brands, Inc.*, 50 F.Supp.2d 188, 202 (S.D.N.Y.1999) (finding top ranking sales dollars and advertising expenses of more than $120 million in a three-year period to be significant indicators of the fame of the mark), *aff'd*, 191 F.3d 208 (2d Cir.1999).

**6.** *See Christopher D. Smithers Found., Inc. v. St. Luke's–Roosevelt Hosp. Ctr.*, 00 Civ. 5502, 2003 WL 115234 at *5–6, 2003 U.S. Dist. LEXIS 373, at *15–16 (S.D.N.Y. Jan. 13, 2003) ("[T]he degree of fame required for protection under the FTDA must exist in the general marketplace, not in a niche market. Thus, fame limited to a particular channel of trade, segment of industry or service, or geographic region is not sufficient to meet that standard." (citing *TCPIP Holding,* 244 F.3d at 99)); *see also Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497 n. 10 (2d Cir.2000) (discussing the requirement for fame in the general marketplace).

■ With regard to inherent distinctiveness, the District Court was correct to conclude that Plaintiff's marks are entitled to a presumption of inherent distinctiveness by virtue of their incontestability. *See Sporty's Farm*, 202 F.3d at 497; *Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 545 (1st Cir.1995). Defendants assert that this presumption should not apply to the marks at issue because they are "merely descriptive" marks, which can never possess inherent distinctiveness. *See TCPIP Holding Co.*, 244 F.3d at 96 ("[D]escriptive marks, which possess no distinctive quality, or at best a minimal degree, do not qualify for the [Dilution] Act's protection."). Defendants' argument is unavailing, however, because Plaintiff's marks are not, as a matter of law, merely descriptive marks.

While it is true that "Savin" is a surname and that Savin Corp. was named after Robert Savin, the brother-in-law of Plaintiff's founder, the word "savin" also has a dictionary meaning.[7] Admittedly, the "Savin" mark is not as obviously distinctive as, for example, "Honda" or "Acura."[8] But it is still entirely possible for a reasonable fact-finder to determine that the "Savin" mark possesses a sufficient degree of distinctiveness to sustain a finding of dilution, especially given that Plaintiff's marks are "not patently used as a surname." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 347 (2d Cir.1999); *see, e.g., IMAF, S.P.A. v. J.C. Penney Co.*, 806 F.Supp. 449, 455 (S.D.N.Y.1992) ("[T]he name (or word) Adiansi is not likely to be immediately identified with a person by an average buyer of a sweater at J.C. Penney. Thus, the fact that Adiansi is a surname is not dispositive on the issue of inherent distinctiveness.").

## B. *Evidence of Actual Dilution*

In *Moseley*, the Supreme Court stated that "direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical." 537 U.S. at 434, 123 S.Ct. 1115. The Court cautioned, however, that "[w]hatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation." *Id.*

Plaintiff interprets *Moseley* to stand for the proposition that where both marks are identical, that fact, in itself, is sufficient circumstantial evidence to satisfy the element of actual dilution. Not all courts read the above-quoted portion of the *Moseley* decision as does Plaintiff, however. Indeed, the District Court did not. And, at least two other courts have questioned whether the Supreme Court intended for plaintiffs to be able to establish a violation of the FTDA merely by showing the commercial use of an identical junior mark. *See Lee Middleton Original Dolls,*

---

7. *See Merriam–Webster's Third New International Dictionary Unabridged* (2002) (defining "savin" as (1) "a mostly prostrate Eurasian evergreen juniper (Juniperus sabina) with dark foliage and small berries having a glaucous bloom and with bitter acrid tops that are sometimes used in folk medicine (as for amenorrhea or as an abortifacient)—called also cover-shame, sabina"; (2) "creeping juniper" or "red cedar"; or (3) "any of several trees, shrubs, or shrubby herbs somewhat resembling plants of the genus *Juniperus* ").

8. *See Am. Honda Motor Co. v. Pro–Line Protoform*, 325 F.Supp.2d 1081, 1085 (C.D.Cal. 2004) ("The famousness and distinctiveness of the Honda Marks cannot be questioned. Indeed, "Honda" and "Acura" are words that were added to the English language by Honda. They are the quintessential distinctive marks . . . .").

*Inc. v. Seymour Mann, Inc.*, 299 F.Supp.2d 892, 902 (E.D.Wis.2004); *see also Nike, Inc. v. Circle Group Internet, Inc.*, 318 F.Supp.2d 688, 695 (N.D.Ill.2004).

The holdings in those cases, however, are of little assistance here. The district court in *Lee Middleton Original Dolls* took a decidedly cautious approach, leaving the issue for the jury to resolve:

> In view of the developing status of the law on the nature of evidence required, the court believes that the best course is to permit the plaintiff the opportunity to present its dilution claim to the jury. The defendant's motion for summary judgment on this issue will be denied.

299 F.Supp.2d at 902. And in *Circle Group Internet*, the court was able to avoid the question on the facts:

> The parties disagree on the correct interpretation of the *Moseley* court's dicta regarding circumstantial evidence. According to defendant, the *Moseley* court meant that proof of actual dilution by circumstantial evidence is sufficient if the marks are identical. Plaintiff, on the other hand, maintains that if the marks are identical, that in itself constitutes sufficient circumstantial evidence of dilution. The court need not resolve this dispute, however, because in addition to the identity of the marks at issue, there is sufficient circumstantial evidence of dilution in the record to preclude summary judgment.

318 F.Supp.2d at 695 (internal citations omitted).

Moreover, the District Court's opinion in the case at bar seems to have been the sole basis for the district courts in those other cases to question the plain import of the at-issue language of the Supreme Court in *Moseley*. *See Lee Middleton Original Dolls*, 299 F.Supp.2d at 902 (citing only *Savin Corp. v. Savin Group*, 2003 WL 22451731, at *14 (S.D.N.Y. Oct.24, 2003), for the proposition that more than a showing of identical marks is required to make out a prima facie case of actual dilution); *see also Circle Group Internet*, 318 F.Supp.2d at 695 (citing only *Savin Corp. v. Savin Group* for same). Indeed, in most of the other cases identified as having dealt with this issue, the courts seem to have assumed that where the other elements of an FTDA claim have been satisfied, *Moseley* only requires a showing of the use of an identical junior mark to establish per se evidence of actual dilution.[9]

■ We interpret *Moseley* to mean that where a plaintiff who owns a *famous* senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual-dilution element of an FTDA claim. Thus, for example, a store owner who loses a 7–Eleven franchise yet continues to use the famous "7–Eleven" mark, in so doing,

9. *See, e.g., Am. Honda Motor Co.*, 325 F.Supp.2d at 1085 ("[W]hen identical marks are used on similar goods, dilution—the capacity of the famous mark to identify and distinguish the goods of the trademark holder—obviously occurs."); *GMC v. Autovation Techs.*, 317 F.Supp.2d 756, 764 (E.D.Mich. 2004) ("GM's evidence establishes actual dilution in that Defendant has used marks that are identical to the world famous GM Trademarks."); *7–Eleven, Inc. v. McEvoy*, 300 F.Supp.2d 352, 357 (D.Md.2004) ("Though dilution claims require evidence of actual confusion, that requirement is satisfied when, as here, the defendant uses the plaintiff's mark."); *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F.Supp.2d 1352, 1372 (S.D.Ga.2003) ("[T]he Court concludes that Variety has diluted the Nike trademarks due to the identical or virtually identical character of the marks on the Accused Goods to the Nike trademarks."); *see also Pinehurst*, 256 F.Supp.2d at 432 (finding actual dilution where defendant used domain names identical and nearly identical to plaintiff's trademarks).

violates the FTDA and may be enjoined thereunder from using the mark. *See 7–Eleven,* 300 F.Supp.2d at 357. Indeed, a number of commentators have suggested that this is precisely what the Supreme Court was getting at in *Moseley*—i.e., that an identity of marks creates a presumption of actual dilution.[10] This would comport with the holdings of other courts in analogous contexts. *See, e.g., Am. Honda Motor Co.,* 325 F.Supp.2d at 1085 ("[W]hen identical marks are used on similar goods, dilution . . . obviously occurs.").

 It cannot be overstated, however, that for the presumption of dilution to apply, the marks must be identical. In other words, a mere similarity in the marks—even a close similarity—will not suffice to establish per se evidence of actual dilution. Further, "where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." *Moseley,* 537 U.S. at 433, 123 S.Ct. 1115. "[S]uch mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the FTDA." *Id.* Strictly enforcing the identity requirement comports well with the purposes of the FTDA and with the principle previously elucidated by this

Court that the class of parties protected by the federal dilution statute is narrow indeed. *See TCPIP Holding Co.,* 244 F.3d at 95 ("The [FTDA] further differs from traditional trademark law in that the class of entities for whose benefit the law was created is far narrower.").

Oftentimes, the issue of whether the marks are identical will be context- and/or media-specific and factually intensive in nature. For instance, marks that are textually identical may appear very different from one another (e.g., in terms of font, size, color, etc.) where they are used in the form of dissimilar corporate logos, either in traditional media or on the Internet. Depending on the circumstance, this may or may not determine the outcome of the identity analysis. Similarly, marks that are textually identical may be pronounced differently, which also could be relevant under certain circumstances, such as, for example, where the marks are used in radio advertising. Indeed, the need for careful and exacting analysis of the identity issue highlights the basis for our emphasis on the famousness factor as a more expeditious avenue of resolution, given the case law in this Circuit limiting application of the FTDA to only the most famous of marks. *See id.*

Here, the marks at issue may be identical in some contexts but not in others.

10. *See, e.g.,* Stacey L. Dogan, *An Exclusive Right to Evoke,* 44 B.C. L.Rev. 291 (2003). Prof. Dogan writes:

> [U]nder the [Supreme] Court's suggested approach [in *Moseley*], proof of dilution requires either that a defendant's use *by its very nature* reduces the singularity of the famous mark (*as when the defendant uses an identical mark*) or that a defendant's use actually reduces the singularity of the famous mark (by, for example, reducing its selling power, as proven through surveys or direct financial evidence).

*Id.* at 315–16 (second emphasis added); *accord* David M. Klein & Daniel C. Glazer,

*Reconsidering Initial Interest Confusion on the Internet,* 93 *Trademark Rep.* 1035, 1048 n. 70 (Sept./Oct.2003):

> Although the Supreme Court's decision in *Moseley* appears to require proof of actual harm to a famous mark in order to prevail on an FTDA claim, the Court suggests that the junior user's exact copying of the mark will be sufficient circumstantial evidence to demonstrate dilution. *123 S.Ct. at 1125.* Presumably, a junior user's transaction of business at a website under a domain name incorporating a mark identical to a famous fanciful mark [such as "xerox.com"] would constitute such circumstantial evidence.

Where the senior and junior "Savin" marks both are used in website addresses, the marks may be identical. On the other hand, where the "Savin" marks at issue appear in stylized graphics on webpages, the competing marks may be found merely to be very similar. For its part, the District Court appears to have concluded, without analysis, that the at-issue marks are identical: "[P]laintiff offers no circumstantial evidence of any kind tending to show actual dilution other than the fact that *the marks are identical.*" 2003 WL 22451731, at *15 (emphasis added). In analyzing the similarity of the marks in the context of assessing Plaintiff's infringement claim, however, the court found as follows:

> [P]laintiff and [D]fendants both use the name "Savin," and their logos display similar block letter fonts, with one arm of the letter "V" slanted at a greater angle than the other. The only apparent difference in the marks is that [D]efendants' logo incorporates four squares, one slightly tilted, to the left of the name. Given that both marks feature the same name, such a difference is inconsequential.

*Id.* at *7 (citations omitted).

We find the District Court's language in this regard to be somewhat ambiguous. In particular, we are uncertain whether, in analyzing the FTDA claim, the court (a) concluded that "the marks are identical," *id.* at *15, based on its previous determination regarding the similarity of the marks in the infringement context; (b) simply assumed them to be identical, arguendo; or (c) arrived at its determination by some altogether different route, perhaps as an effect of choices made by Plaintiff in pleading its case and presenting its evidence. In light of the lack of any detailed analysis in the opinion of the District Court regarding the issue of the identity of the marks

for purposes of the FTDA claim, we deem it necessary to remand the issue to the District Court for clarification and specific findings as to whether the junior and senior marks are identical.

■ In this regard, we caution that although the differences between the marks noted by the court in the infringement context may be inconsequential in that context, such differences may indeed be relevant in the analysis of the dilution issue. The fact that Defendants have used the marks somewhat differently than has Plaintiff—e.g., by registering the domain name www.thesavingroup.com as opposed to simply www.savin.com—may also be relevant. We emphasize, however, that it is the identity of the marks themselves that is germane in the dilution context, and the modifying of the mark—by adding one or more generic descriptors to the mark in a website address, for example—will not necessarily defeat a showing that the marks themselves are identical in specific contexts. *See, e.g., A.C. Legg Packing Co. v. Olde Plantation Spice Co.,* 61 F.Supp.2d 426, 430–31 (D.Md.1999) ("OPSC's OLDE PLANTATION SPICE mark is nearly identical in appearance to A.C. Legg's OLD PLANTATION mark, differing only in the spelling of 'olde' and the addition of the generic word 'spice.' " *The marks are identical in sound and connotation.*" (emphasis added)); *cf. Golden Door, Inc. v. Odisho,* 646 F.2d 347, 350 (9th Cir.1980) (focusing, in the infringement context, on identical *portions* of a junior and senior mark).

For all of the foregoing reasons, we vacate that portion of the judgment of the District Court dismissing Plaintiff's claim of a violation of the FTDA, and remand for proceedings consistent with this opinion.

## II. *The State–Law Dilution Claim*

■ In ruling on Plaintiff's state-law dilution claim, brought under New York

General Business Law § 360–1, the District Court held that "[t]he standards for dilution under Section 360–1 are 'essentially the same as that under § 43(a) of the Lanham Act.'" *Savin Corp. v. Savin Group,* 2003 WL 22451731, at *16 (quoting *Winner Int'l LLC v. Omori Enters., Inc.,* 60 F.Supp.2d 62, 73 (E.D.N.Y.1999)). The District Court then held that "[a]s [P]laintiff failed to produce sufficient evidence to create a triable issue under the FTDA, it follows that the Section 360–1 claim also fails." *Id.* Based on this conclusion, the court granted summary judgment to Defendants on the Section 360–1 claim. The District Court was incorrect, however, to rely on *Winner International LLC v. Omori Enterprises, Inc.,* and the sources cited therein, for the proposition that the same showing must be made to sustain an FTDA claim as to sustain a claim under Section 360–1. Indeed, a careful reading of the relevant language in *Winner* makes clear that the particular point of federal-state equivalence that was dispositive in that case is inapposite to the case at bar.

In *Winner,* the district court was concerned principally with the question of the similarity of two competing trade dresses. *See* 60 F.Supp.2d at 64–65. In assessing the plaintiff's claims for dilution under the FTDA and under state law, the court found as follows:

In order to establish a claim for injury to business reputation or dilution [under New York law], plaintiff must establish two elements: (1) a distinctive mark capable of being diluted and (2) a likelihood of dilution....

Dilution has been defined as either a blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey. A prerequisite to a finding of dilution is that the marks are substantially similar. That standard has been applied to a finding of dilution under federal law as well.

*Id.* at 73 (citations and internal quotation marks omitted). The *Winner* court concluded that because the at-issue trade dresses were not substantially similar, a claim for dilution was not sustainable under either the FTDA or the New York statute.

Here, in contrast, the District Court impliedly found the at-issue marks to be not only substantially similar but in some contexts virtually identical. *See* 2003 WL 22451731, at *7, *15; *see also* discussion *supra* part I.B. This case, then, is plainly distinguishable from *Winner* on the facts. In any event, regarding the issue of the standard of proof for a claim of a violation of the FTDA, neither *Winner* nor the sources cited therein and relied on by the District Court represent a correct view of the law as it now stands.

A likelihood of dilution may have been enough to sustain a claim for dilution under the FTDA in 1999. In 2003, however, the Supreme Court decided *Moseley,* which changed the landscape of the law on this issue. As the Sixth Circuit noted in *AutoZone, Inc. v. Tandy Corp.:*

To resolve a circuit split, the Supreme Court addressed the discrete issue of whether a dilution claim required proof of actual dilution or whether proof of a likelihood of dilution would suffice. Analyzing the text of [the FTDA], the Court held that the statute "unambiguously requires a showing of actual dilution, rather than a likelihood of dilution."

373 F.3d 786, 804 (6th Cir.2004) (quoting *Moseley,* 537 U.S. at 433, 123 S.Ct. 1115) (citations omitted).

This Circuit was one of those which, before *Moseley,* required a showing of a mere likelihood of dilution to sustain a claim of a violation of the federal statute. *See, e.g., Nabisco, Inc. v. PF Brands, Inc.,*

191 F.3d 208, 224–25 (2d Cir.1999) (reading the federal anti-dilution "statute to permit adjudication granting or denying an injunction, whether at the instance of the senior user or the junior seeking declaratory relief, before the dilution has actually occurred"). Now, of course, the federal standard requires a showing of actual dilution, *Moseley*, 537 U.S. at 434, 123 S.Ct. 1115; *see* discussion *supra* part I, and, thus, is more stringent than the New York standard. Therefore, the District Court erred in dismissing Plaintiff's Section 360–1 dilution claim based solely on the court's determination that Plaintiff had "failed to produce sufficient evidence to create a triable issue under the FTDA." [11] 2003 WL 22451731, at *16. Accordingly, we vacate that portion of the judgment of the District Court dismissing the state-law dilution claim and remand for consideration of that claim under the appropriate standard.

### III. *The Trademark Infringement Claim*

■ "A claim of trademark infringement ... is analyzed under [a] familiar two-prong test[.] ... The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether [the] defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enters., Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir.2003) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir.1993)).

### A. *Validity of Plaintiff's Marks*

Defendants admit that three of Plaintiff's marks are incontestable. *Savin Corp. v. Savin Group*, 2003 WL 22451731,

at *4. Accordingly, we need not tarry with the first prong of the infringement test.

### B. *Likelihood of Confusion*

■ "[T]he crucial issue in an action for trademark infringement ... is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 542 (2d Cir.1956). "The court, in making this determination and fashioning suitable relief, must look ... to a host of other factors." *Mushroom Makers*, 580 F.2d at 47. First articulated in the seminal case *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d at 495, the eight principal factors, known as the *Polaroid* factors, are as follows: (1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers. *Id.* Moreover, depending on the complexity of the issues, "the court may have to take still other variables into account." *Id.*

Here, Plaintiff argues that the District Court erred in its application of the first and sixth factors—i.e., in assessing (i) the strength of Plaintiff's mark and (ii) the good faith of Defendants in adopting their own mark. Plaintiff also notes that *if* the

---

**11.** Defendants tacitly concede that the District Court erred in this regard, but advance a sort of "harmless error" argument, asserting that the District Court's determinations relating to other issues—the *Polaroid* factors, for example—make clear that Plaintiff failed to show even a likelihood of dilution. This argument has no merit, as the various analyses undertaken by the court are fact-intensive, highly specific, and hardly interchangeable.

District Court erred in assessing the strength of the senior mark, then error would be implied in the court's analysis of proximity as well. For their part, Defendants argue that even if the court erred in analyzing the strength of the senior mark and the good faith of Defendants, any "such error would be insufficient to overturn the ruling of the [D]istrict [C]ourt on likelihood of confusion, as five of the other *Polaroid* factors weigh in favor of [Defendants], and no single factor of the analysis is dispositive."

◼ "In reviewing the [D]istrict [C]ourt's evaluation of the *Polaroid* factors, each individual factor is reviewed under a clearly erroneous standard, but the ultimate determination of the likelihood of confusion is a legal issue subject to *de novo* review." *Brennan's, Inc. v. Brennan's Rest. L.L.C.*, 360 F.3d 125, 130 (2d Cir.2004).

### 1. *Strength of the Senior Mark*

◼ "[T]he strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." *McGregor–Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131–32 (2d Cir.1979), *overruled on other grounds by Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1043–44 (2d Cir.1992). As noted above, an incontestible registered trademark enjoys a conclusive presumption of distinctiveness. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 204–05, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *see also* discussion *supra* part I. Yet even if a mark is registered and, thus, afforded the utmost degree of protection, *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986), the presumption of an exclusive right to use the mark extends only so far as the goods or ser-

vices noted in the registration certificate, *Mushroom Makers*, 580 F.2d at 48.

◼ Here, the District Court made the following findings:

Three of [P]laintiff's marks are incontestable and hence are presumptively strong as applied to the goods and services listed on the registrations, namely: Liquid and paper for photocopiers; photocopiers and parts thereof; and maintenance and repair services for photocopiers and word processors. Plaintiff is also able to show that its marks possess secondary meaning in the market for high-quality business machinery and related services. Plaintiff has submitted evidence that it sells it [sic] products through seventeen branches and over [250] trained dealers throughout the United States; spent over $20 million in advertising in 2002; and realized annual revenues of over $675 million. Such evidence is sufficient to establish that [P]laintiff's marks possess secondary meaning in [P]laintiff's market.

2003 WL 22451731, at *6 (footnote and citations omitted). Critically, however, the court also found that Plaintiff had not shown "that its marks [were] strong in the market for professional engineering" services, and had not "submitted [any] evidence that its marks possess[ed] secondary meaning in the market for professional engineering" services. *Id.*

As we find no clear error in these findings, we conclude that the District Court did not err in determining that the presumption of the strength of Plaintiff's mark does not extend to the field of professional engineering. *See Mushroom Makers*, 580 F.2d at 48; *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F.Supp.2d 305, 312 (S.D.N.Y.2000). Accordingly, we also agree with the court's ultimate determination that the first *Polaroid* factor,

strength of the mark, weighs in favor of Defendants.

## 2. *Similarity of the Marks*

"[E]ven close similarity between two marks is not dispositive of the issue of likelihood of confusion." *McGregor–Doniger*, 599 F.2d at 1133. "Rather, the crux of the issue is whether the similarity is likely to cause confusion among numerous customers who are ordinarily prudent." *Swatch Group (U.S.) Inc. v. Movado Corp.*, 01 Civ. 0286, 2003 WL 1872656 at *3, 2003 U.S. Dist. LEXIS 6015, at *11 (S.D.N.Y. Apr. 10, 2003) (citing *Morningside Group Ltd. v. Morningside Capital Group L.L.C.*, 182 F.3d 133, 139–40 (2d Cir.1999)). Thus, "an inquiry into the degree of similarity between two marks does not end with a comparison of the marks themselves." *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1130 (2d Cir.1982). As this Court has stated, "the setting in which a designation is used affects its appearance and colors the impression conveyed by it." *McGregor–Doniger*, 599 F.2d at 1133 (internal quotation marks omitted). Indeed, the " 'impression' conveyed by the setting in which the mark is used is often of critical importance." *Spring Mills*, 689 F.2d at 1130.

Here, the District Court found that:

> [P]laintiff and Defendants both use the name "Savin," and their logos display similar block letter fonts, with one arm of the letter "V" slanted at a greater angle than the other. The only apparent difference in the marks is that [D]efendants' logo incorporates four squares, one slightly tilted, to the left of the name. Given that both marks feature the same name, such a difference is inconsequential.

2003 WL 22451731, at *7. In addition, one of the settings in which the junior mark has allegedly infringed the senior mark is the Internet, where the subtle differences in font and other characteristics noted by the District Court are of even less significance, given that the overarching concern of the individual searching the Internet is to arrive at the correct website, which is ultimately identified by a purely text-based website address.[12] We find no clear error in the District Court's determinations on this point and, in light of the foregoing, agree that this factor weighs in Plaintiff's favor.

## 3. *Proximity of the Entities' Products and/or Services*

"This factor focuses on whether the two products compete with each other. To the extent goods (or trade names) serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir.1991). In assessing this factor, "the court may consider whether the products differ in content, geographic distribution, market position, and audience appeal." *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir.1993); *see, e.g., Ar-*

---

12. *See Pinehurst,* 256 F.Supp.2d at 431:

> A significant purpose of a domain name is to identify the entity that owns the [website]. Customers searching for a company's website will often search using a domain name identical or similar to the company's name or mark. . . . Customers unable to locate [a plaintiff's] website using domain names identical to its marks, . . . may fail to continue to search for [the plaintiff's] own home page, due to anger, frustration, or the belief that [the plaintiff's] home page does not exist.

(citations and internal quotation marks omitted).

*row Fastener Co. v. Stanley Works,* 59 F.3d 384, 396 (2d Cir.1995) (holding that customers were not likely to be confused when both parties sold staplers in the same stores, but one party sold a pneumatic stapler and the other a lightweight small stapler).

■■■ Here, the District Court found, inter alia, as follows:

[T]he [proportional] difference in price between [P]laintiff's back office facilities management services and [D]efendants' professional engineering services is at least as great as, if not greater than, that between the two types of staplers in *Arrow Fastener.* Similarly, the expertise of [P]laintiff's engineers in information technology and that of [D]efendants' [engineering professionals] in construction and waste management projects serve very different needs within the sectors from which both parties draw their customers.

. . . .

Even though [P]laintiff's marks may be strong in the market for sophisticated business equipment and services, professional engineering services do not reasonably fall within the broadly defined market of potentially related services. Although the marks are very similar, consumers are unlikely to be confused as to source because [of] the competitive distance between the parties' services

. . . .

2003 WL 22451731, at *8–9. We discern no clear error in the District Court's findings on this point, and thus we concur in the court's determination that the at-issue products and services are not proximate as a matter of law.

### 4. *Actual Confusion*

■■■ "[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confu-

sion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear,* 799 F.2d at 875. Nonetheless, it has been noted that:

There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion. Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.

*World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir.1971).

■■■ In the instant case, the District Court found that Plaintiff had submitted as evidence of actual confusion only the single incident at the chamber of commerce meeting, *see supra,* where "someone who had previously sold an exhibit to [D]efendants mistakenly concluded that one of [P]laintiff's executives was associated with [Savin Engineers]." 2003 WL 22451731, at *10. A single "anecdote[ ]" of confusion over the entire course of competition," however, "constitute[s] *de minimis* evidence insufficient to raise triable issues." *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 124 (2d Cir. 2001). The District Court's findings on this point are not clearly erroneous, and we find that the court committed no error in concluding that this factor weighs in Defendants' favor.

### 5. *Bridging the Gap*

■■■ The question under this factor is the likelihood that Plaintiff will enter the market for professional engineering services relating to the construction industry. *See W.W.W. Pharm. Co.,* 984 F.2d at 574. "This factor is designed to protect the senior user's 'interest in being able to en-

ter a related field at some future time.'" *Id.* (quoting *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir. 1976)).

 Here, the District Court found that:

> Plaintiff claims that it intends to expand its involvement in the area of facilities management, but the only evidence [P]laintiff presents to support this allegation is a statement [by Thomas Salierno, Plaintiff's President and Chief Operating Officer,] that [P]laintiff intends to "work[ ] in an office environment and expand[ ] [into] whatever the customer needs." This statement fails to support any inference that [P]laintiff intends to enter [D]efendants' market.

2003 WL 22451731, at *9 (citations omitted). We agree with the District Court's conclusion that even drawing all inferences in Plaintiff's favor, this bare assertion fails to raise a genuine issue of material fact that Plaintiff is likely to enter Defendants' corner of the marketplace.

### 6. *Good Faith*

 The good-faith factor "considers whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and [on] any confusion between his and the senior user's product." *W.W.W. Pharm. Co.,* 984 F.2d at 575 (internal quotation marks omitted).

 Here, Plaintiff asserts that Defendants acted in bad faith because (i) Dr. Nivas "had knowledge of [Plaintiff's] products and services for approximately ten years"; (ii) Savin Engineers "never performed a search or investigation prior to adopting and launching their trade names incorporating the term SAVIN"; and (iii) Savin Engineers were aware of Plaintiff's "savin.com domain name prior to registering their thesavingroup.com and savinengi-

neers.com domains." Therefore, Plaintiff argues, the District Court clearly erred in finding that Defendants did not act in bad faith.

Notably, however, the District Court also found, in particular, that Defendants:

> had no reason to believe that they might be infringing another's marks[,] because they were not copying the mark from another entity. In fact, [D]efendants' founder was not even aware of [P]laintiff's existence at the time he adopted his mark, and arrived at the name "Savin" independently by reversing the spelling of his nickname "Nivas."

2003 WL 22451731, at *10. Moreover, as the District Court observed, even if Defendants had conducted a trademark search, they would have discovered only that the "Savin" mark was registered for photocopiers and related goods and services and, hence, would have had no reason to believe that using the same name for professional engineering services would infringe Plaintiff's marks. *Id.* at *11.

 In any event, "failure to perform an official trademark search, ... does not[,] standing alone[,] prove that [Defendants] acted in bad faith." *Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 746 (2d Cir.1998). Nor is "[p]rior knowledge of a senior user's trade mark" inconsistent with good faith. *See Arrow Fastener,* 59 F.3d at 397. Accordingly, we conclude that the District Court was correct in determining that Plaintiff has failed to raise a material issue of fact regarding Defendants' alleged bad faith.

### 7. *Quality of the Entities' Product and/or Services*

 "The next factor, quality of the junior user's product, is the subject of some confusion." *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 78 (2d Cir.1988).

Essentially, there are two issues with regard to quality, but only one has relevance to determining the likelihood of confusion. If the quality of the junior user's product is low relative to the senior user's, then this increases the chance of actual injury where there is confusion, i.e., through dilution of the senior user's brand. *Id.; see, e.g., Lois Sportswear,* 799 F.2d at 875. A marked difference in quality, however, actually tends to reduce the likelihood of confusion in the first instance, because buyers will be less likely to assume that the senior user whose product is high-quality will have produced the lesser-quality products of the junior user. Conversely, where the junior user's products are of approximately the same quality as the senior user's, there is a greater likelihood of confusion, but less possibility of dilution. *Hasbro,* 858 F.2d at 78; *see, e.g., Lois Sportswear,* 799 F.2d at 875.

In this case, the District Court found that as Defendants' services were "not closely similar to those provided by [P]laintiff," any equivalence in "quality between their products [was] unlikely to cause confusion." 2003 WL 22451731, at *11 (citation omitted). This finding is neither clearly erroneous nor, for that matter, even challenged on appeal.

### 8. *Sophistication of Purchasers*

■ As the theory goes, the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace. *See Maxim's, Ltd. v. Badonsky,* 772 F.2d 388, 393 (7th Cir.1985) ("[I]n general, where 'the cost of the defendant's trademarked product is high, the courts assume that purchasers are likely to be more discriminating than they might otherwise be.'" (quoting Jerome Gilson, *Trademark Protection and Practice* § 5.08 (1985))).

■ Here, the District Court found that both Plaintiff and Defendants:

> offer highly priced services that do not usually invite impulse buying and are ordinarily purchased by experienced professionals in the course of business. The decision to invest in new business equipment or to engage professional engineers is often the result of careful deliberation by more than one individual in the purchasing organization. The likelihood that such sophisticated consumers will be confused as to the source of the services is remote.

2003 WL 22451731, at *12. On appeal, Plaintiff does not so much challenge this finding as sidestep it, implying that the District Court erred because "most individuals, whether they are sophisticated or unsophisticated, come into contact with the type of office equipment manufactured by [Plaintiff]." Indeed, notes Plaintiff, "[e]veryone uses photocopiers and fax machines."

■ Of course, the relevant inquiry is not whether daily users, or, even more amorphously, "individuals . . . com[ing] into contact" with Plaintiff's products, would likely confuse them with those of Defendants. Rather, the pertinent question is whether "numerous ordinary prudent *purchasers*" would likely "be misled or confused as to the source of the product in question because of the entrance in the marketplace of [Defendants'] mark." *Gruner + Jahr USA Publ'g,* 991 F.2d at 1077 (emphasis added); *see also Brennan's,* 360 F.3d at 134 ("To succeed on an infringement claim, plaintiff must show that it is probable, not just possible, that *consumers* will be confused." (emphasis added)). The District Court's findings on this point, which are not squarely challenged on appeal, may have been somewhat in the nature of "common sense" assumptions, but this does not make them

clearly erroneous. In any event, we find no error in the court's determination that this factor weighs in Defendants' favor.

### C. Balancing the Factors

As the District Court found, one of the *Polaroid* factors—similarity of marks—weighs in Plaintiff's favor, while the other factors weigh in favor of Defendants.[13] Having undertaken our own, de novo review of the balancing of the various factors, we find nothing to quarrel with in the District Court's analysis of the Lanham Act infringement claim and ultimate conclusion that that claim cannot survive summary judgment. In sum, Plaintiff "has not at this point demonstrated a likelihood of confusion." *Brennan's,* 360 F.3d at 130. Accordingly, we affirm that portion of the District Court's judgment dismissing the infringement claim.

We have considered the parties' remaining arguments and find them to be without merit.

### CONCLUSION

For the foregoing reasons, we vacate those portions of the judgment of the District Court dismissing Plaintiff's FTDA and state-law dilution claims; remand for further proceedings consistent with this opinion; and affirm the judgment in all other respects.

**13.** The District Court also included an "Internet initial interest confusion factor" in the *Polaroid* balancing test. *See* 2003 WL 22451731, at *12–13. Such confusion arises when a consumer who searches for the plaintiff's website with the aid of a search engine is directed instead to the defendant's site because of a similarity in the parties' website addresses. *See BigStar Entm't, Inc. v. Next Big Star, Inc.,* 105 F.Supp.2d 185, 207 (S.D.N.Y.2000). Because consumers diverted on the Internet can more readily get back on track than those in actual space, thus minimizing the harm to the owner of the searched-for site from consumers becoming trapped in a competing site, Internet initial interest confusion requires a showing of intentional deception. *See id.; see also Bihari v. Gross,* 119 F.Supp.2d 309, 319 (S.D.N.Y. 2000). Here, the District Court found that Plaintiff had failed to raise a triable issue of fact with regard to either a likelihood of confusion or intentional deception, and, accordingly, the court concluded that this factor, too, weighs in Defendants' favor. We find no error in the court's determination on this issue, which, in any event, Plaintiff does not directly challenge on appeal.